### · People *ex rel.* Doyle v. Green.

*New York city — assessments for street improvements. Mandamus — when proper.*

The provisions of Laws of 1869, chapter 302, providing for the organization of a board of assessors in the city of New York, and conferring upon it the duty of making estimates and assessments for paving, etc., streets; *held*, to include estimates and assessments for grading, etc., of streets in pursuance of Laws of 1867, chapter 697, notwithstanding the last-named act directed the estimates, etc., to be made in accordance with a previous statute then in force.

Where a board to revise assessments erroneously decided that the board making an assessment of relator's damages had no jurisdiction, and refused to pass upon such assessment, and the relator was unable to obtain relief by action; *held*, that a mandamus requiring such board of revision to meet and confirm the assessment was proper.

APPEAL by defendants from an order at special term allowing a peremptory mandamus.

The proceedings were instituted upon the relation of Teresa A. Doyle against Andrew H. Green and others as the board of revision, etc., of assessment lists in the city of New York, and Thomas B. Asten and others as the board of assessors in said city to compel said board of revision to confirm an assessment list for altering the grade of a street. The facts sufficiently appear in the opinion.

*E. Delafield Smith* and *William Barnes*, for appellants.

*James A. Deering*, for respondents.

Present — Davis, P. J., Brady and Daniels, JJ.

Davis, P. J. We think the order of the special term was right for the following reasons: First. In establishing a new grade for One Hundred and Twenty-second street, from Mount Morris square to Ninth avenue, and altering the former grade, the commissioners of Central Park acted under chapter 697 of the Laws of 1867. The third section of that act provides that " all damage to any land, or to any building or structure thereon existing at the time of the passage of this act * * * by reason of closing such street, or alter-

ing the grade thereof, shall be ascertained and paid in the manner specified in sections three and four of an act entitled 'An act to make permanent the grades of the streets and avenues of the city of New York, passed March 4, 1852.'" The building of the relator was erected in 1860, and was existing at the time of the passage of the act of 1867. The damages to her building and premises by the change of the grade were, therefore, a proper subject of estimate and assessment.

At the time of the passage of the act of 1867 the estimate and assessment of the damages were doubtless to be made in the mode pointed out by the act of 1852 therein referred to, and a reference to the last-named act shows that those things were to be done as provided in the 175th section of the act of April 9, 1813.

But the legislature, by chapter 302 of the Laws of 1869, provided for the organization of a board of assessors, upon which it conferred the duty of making the estimate and assessments required by law "for * * * pitching, paving, regulating, and repairing streets." The estimate and assessment of damages in such cases as the relator's are, as we have seen above, *required by law,* and the language used in defining the duties of the board of assessors, as above quoted, is broad enough to include the regrading of streets by the commissioners of parks under the acts of 1867. If the words "pitching, * * * regulating, and repairing," as used in the act of 1869, are applicable at all to the streets and avenues, which are put under the exclusive control and jurisdiction of that commission, there seems to be no reason to doubt that they include the grading anew of those streets under the law of 1867. Otherwise the expenses of carrying out their powers are to be subdivided for the purposes of estimate and assessment, and in the mode of enforcement and collection. The system intended to be created and applied to the streets, transferred from the general jurisdiction of the common council to the commissioners of parks, would be seriously complicated and embarrassed by a construction which should hold that a portion of the damages to be estimated and assessed, when an established grade is changed, is to be remanded to the process provided by the law of 1813, while the estimate and assessment of all other damages growing out of the same improvement are to be conducted by the board of assessors, created under the act of 1859. We are of opinion that the board of assessors were clothed with power over the whole subject,

and that their estimate and assessment of the damages to the relator's buildings was clearly within their jurisdiction.

Second. The board of revision and correction constituted by chapter 308 of the Laws of 1861, took thereby the power and authority then vested in the common council of the city of New York "relative to assessment lists and the confirmation thereof." It is not necessary to consider the question whether power is given to that board to review the awards made for damage in cases of this kind, or whether the board may return the assessments, with instructions to the board of assessors to reconsider and revise the awards. Nothing of that kind has been attempted in this case. But as we understand the action of the board of revision, it has returned the assessment list to the board of assessors with direction to strike out the assessment of the relator's damages on the sole ground that the latter board had no jurisdiction to estimate and assess them. In the decision of that question, we are of opinion that the board of revision erred, and that it was its duty, if no other objection to the assessment existed, to have proceeded to its confirmation. It was not suggested to the court below, that any other ground of objection existed. The case was submitted at the special term upon the facts presented by the petition and affidavits on the part of the relator, which were either conceded or assumed to be true, and for that reason the mandamus was made peremptory. No other facts are suggested to us.

It is urged by the counsel for the relator, that the assessment had become confirmed by operation of law, by reason of the lapse of time. The act of 1861 declares that the revision of such assessment lists shall be made without delay, so that the same shall be confirmed within thirty days from the time they shall respectively be presented for confirmation, and if not so confirmed, they shall be deemed to be confirmed at the expiration of thirty days after they shall be respectively so presented for confirmation. This provision is clearly mandatory, and not simply directory. The assessment in this case was presented for confirmation February 11, 1874. No action was taken by the board until the 26th of March, 1874, when the resolution remanding the assessment for revision was adopted. We have not examined subsequent legislation to see how far the provision of the act of 1861 may have been modified, because we do not deem it material to pass upon the effect of the delay of more than thirty days.

People ex rel. Doyle v. Green.

If, however, the board of revision were right in the position that the board of assessors had no power on the question of such damages, then the proceedings of the latter board would be *coram non judice*, and wholly void. No lapse of time would confirm such a nullity, and there would, in such case, be no objection to the return of the lists for the purpose of eradicating the excess of jurisdiction, and conforming it to the authority possessed by the board of assessors. If this could not be done, then the law would be chargeable with the absurdity of confirming, by lapse of time, an assessment which it must, in the next breath, declare to be absolutely void for want of jurisdictional power in the assessors who made it.

Third. The remedy by mandamus seems to be the appropriate and only one at this stage of the proceedings. The relator has no remedy by action at law for her damages. They are, at common law, *damnum absque injuria*, as has been adjudicated in numerous cases. *Radcliffe, Exr.,* v. *Brooklyn,* 3 N. Y. 195 ; *Mills* v. *Brooklyn,* 32 id. 489, and numerous cases therein cited. Her sole remedy is through the special proceedings authorized by statute, and unless those proceedings are regularly brought to complete consummation, she cannot enforce payment, as permitted by the acts above referred to. Whatever official step is essential to that end, whenever it becomes a duty which an officer or board of officers is legally bound to perform, becomes also the appropriate subject of mandamus, if the officer refuses to perform the duty to the prejudice of public or private rights. In this case, the official requisite to perfect the assessment list is withheld in good faith, doubtless, but upon an untenable ground, which, in law, is no excuse. And beside this, the board of assessors are directed to do an act, officially, which the board of revision had not authority to command, but which, if done, will deprive the relator of legal rights by *de facto* destroying an assessment lawfully made in her favor. To compel the performance of official duties, which will prevent any such consequences, seems to us a proper office of the writ of mandamus ; although it incidentally arrests action, which, when taken, might be the subject of other remedies.

Under the circumstances, we think the appellants should not be charged with costs of the appeal. The order appealed from is affirmed.

*Order affirmed.*